**RIVERDALE MILLS CORPORATION,**
Petitioner,

v.

**UNITED STATES FEDERAL AVIATION ADMINISTRATION,**
Respondent.

**No. CIV.A. 03–40230–NMG.**

United States District Court,
D. Massachusetts.

Feb. 9, 2006.

Warren G. Miller, Miller & Miller, Boston, MA, for Riverdale Mills Corporation, Plaintiff.

Barbara Healy Smith, United States Attorney's Office, Boston, MA, for United States Department of Transportation Federal Aviation Administration, Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

The petitioner, Riverdale Mills Corp. ("Riverdale"), appeals a final agency action of the respondent, the Federal Aviation Administration ("FAA"). Both parties submit that the appeal to this Court should

be resolved by summary judgment on the administrative record.

## I. *Background*

It is undisputed that in March, 1998, David Dow ("Dow"), an employee of Riverdale, attempted to board a plane in the course of a business trip from Bangor, Maine to Vancouver, British Columbia, while carrying in his luggage to be checked two 16–ounce cans of AQUAMEND, a flammable material that is classified as hazardous by United States Department of Transportation ("USDOT") regulations. One can was labeled, in part, "RIVERDALE MILLS, AQUAMEND, LIQUID VINYL REPAIR MATERIAL" and "DANGER, EXTREMELY FLAMMABLE". The parties stipulate that Dow either knew or should have known that AQUAMEND was a flammable, hazardous material and that Dow failed to comply with applicable USDOT Hazardous Material Regulations ("HMR"), 49 C.F.R. Part 171 *et seq.*, when he offered the AQUAMEND for transport in his checked baggage.

In October, 1998, the FAA filed a civil complaint against Riverdale alleging numerous violations of the HMR.[1] The proceeding was assigned to Chief Administrative Law Judge ("ALJ") Yoder in February, 2001, before whom the parties agreed to stipulations of fact and exhibits. In May, 2002, Chief ALJ Yoder allowed a motion by the FAA for judgment on the pleadings and assessed a penalty of $20,000 against Riverdale. On appeal, the decision of Chief ALJ Yoder was affirmed by the FAA Administrator, Marion Blakey, whereupon Riverdale filed an appeal in this Court pursuant to the Administrative Procedure Act ("APA").

## II. *Cross–Motions for Summary Judgment*

Riverdale contends that the liability of Dow may not be imputed to it because 1) Dow's liability was based on constructive, rather than actual, knowledge or, in the alternative, 2) Dow's wrongful conduct was intentional. The FAA contests both of Riverdale's positions.

### A. Standard of Review

Because Riverdale challenges the final decision of an administrative agency, the Court may overturn that decision only if it finds that the legal conclusions of the FAA Administrator were "arbitrary, capricious, or otherwise not in accordance with law" or that her factual conclusions were "unsupported by substantial evidence". *Clean Harbors Envtl. Services, Inc. v. Herman,* 146 F.3d 12, 19 (1st Cir.1998) (citations omitted).

### B. Discussion

A person is civilly liable under the HMR where he "knowingly" violates a regulation pursuant to the hazardous materials transportation statute. *See* 49 U.S.C. § 5123. "Knowingly" means that

> (A) the person has actual knowledge of the facts giving rise to the violation; or
>
> (B) a reasonable person acting in the circumstances and exercising reasonable care would have that knowledge.

*Id.*

■ That an agent's knowledge is imputed to his principal is a general rule of agency law. *See, e.g., Mut. Life Ins. Co. of*

---

1. Specifically, Riverdale was alleged to have violated 49 C.F.R. §§ 171.2(a), 172.200(a), 172.202(a)(1)-(5), 172.202(b)-(c), 172.204(a) or (c)(1), 172.204(c)(2)-(3), 172.300(a), 172.301(a), 172.304(a)(1), 172.400(a), 172.600(c)(1) and 173.1(b). The FAA withdrew the allegation of liability under § 173.1(b).

*N.Y. v. Hilton–Green*, 241 U.S. 613, 622, 36 S.Ct. 676, 60 L.Ed. 1202 (1916). *See also Meyer v. Holley*, 537 U.S. 280, 285–86, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003) (citations omitted). Thus, Riverdale may not escape vicarious liability in this instance unless it demonstrates the applicability of an exception to that general rule. Here, Riverdale contends that either of two, mutually exclusive exceptions preclude an imputation of liability to it: 1) that Dow's knowledge was constructive rather than actual or 2) that Dow's acts were intentional. The Court finds both of Riverdale's contentions misplaced.

■ Riverdale relies on the Restatement (Second) of Agency, § 277, in support of its position that vicarious liability does not attach where the liability of an agent is based on constructive rather than actual knowledge and the principal lacks independent knowledge of wrongdoing. Section 277 states that

> [t]he principal is not affected by the knowledge which an agent should have acquired in the performance of the agent's duties to the principal or to others except where the principal or master has a duty to others that care shall be exercised in obtaining information.

Riverdale asserts that because review of a motion for judgment on the pleadings obligates the judge to consider the evidence in the light most favorable to the nonmovant, the FAA decision-makers should have assumed that Dow did not *actually* know, but rather *should have* known, of the hazardous nature of AQUAMEND. Viewed within that posture, Riverdale contends that § 277 of the Restatement clearly forbids an imputation of Dow's liability to Riverdale.

In her affirmance of the decision by Chief ALJ Yoder, the FAA Administrator found that § 277 did not release Riverdale from liability because 1) Dow had *actual*,

not merely constructive, knowledge of the facts giving rise to the violation and 2) the HMR impose a duty upon Riverdale to ensure that its employees use care in obtaining information.

With respect to her first point, the Administrator reasoned that Dow's knowledge as to whether AQUAMEND was deemed hazardous under the HMR was not a determination of fact but rather an issue of law. Consequently, Dow was deemed to have *actual* knowledge of the facts giving rise to the violation even though he may have had merely *constructive* knowledge of the legal import of those facts. In this case, Dow clearly had actual knowledge of the facts underlying the violation: that he packed the AQUAMEND in his luggage which he then checked. Aside from the fact that the First Circuit Court of Appeals has not adopted § 277, the Court finds the FAA Administrator's decision both reasonable and persuasive.

■ Riverdale's contention that it may escape vicarious liability on the grounds that Dow's violation was intentional is also misplaced. It is firmly established that liability is imputed to an employer whose employee commits an intentional tort while acting within the scope of his employment. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) ("An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment"). Vicarious liability attaches even where the employee acts in disregard of his employer's instructions. *Id.* (citations omitted).

In this case, Riverdale concedes that Dow's business trip, for which purpose he intended to transport the AQUAMEND, was within the scope of his employment. Furthermore, one can of AQUAMEND

was labeled "RIVERDALE MILLS" and Dow asserted in an affidavit that he was acting solely for the benefit of Riverdale when he packed the AQUAMEND in his luggage. Consequently, it is beyond doubt that Dow's actions were within the scope of his employment thereby making Riverdale liable for those actions regardless of whether they were intentional or negligent.

## ORDER

In accordance with the foregoing, the motion for summary judgment of the respondent, FAA, (Docket No. 13) is ALLOWED and the motion for summary judgment of the petitioner, Riverdale Mills, (Docket No. 12) is DENIED.

**So ordered.**